ALBANY,
Oct. 1828.

Olmsted
v.
Miller.

---

## OLMSTED vs. MILLER.

*In slander, though the words proved are equivalent to the words charged in the declaration, yet not being the same in substance, an action cannot be maintained; and though the same idea is conveyed in the words charged and those proved, yet if they are not substantially the same words, though they contain substantially the same charge, but in different phraseology, the plaintiff is not entitled to recover. Proof that the plaintiff was refused civil treatment at a public house, in consequence of slanderous words, it seems, is sufficient to support an averment of special damage. Special damage must be shewn to have been the consequence of the words spoken.*

ERROR from the Westchester common pleas. Mary Miller brought an action of *slander* against Joseph Olmsted. The declaration contained four counts. In the three first, the words charged to have been spoken were the following : " She (meaning the plaintiff) had connection (meaning carnal and sexual intercourse and connection) with Phineas Barrett (meaning a certain man by that name)." " She (meaning, &c.) had connection (meaning, &c.) with Wm. Marshall (meaning, &c.)" " Robert Brown (meaning a certain colored man of that name) had connection (meaning carnal and sexual intercourse and connection) with her (meaning the plaintiff)." In the fourth count, the defendant was charged with having said, " that she, the said plaintiff, was a prostitute ; that she had had sexual and criminal intercourse with a man by the name of Phineas Barrett, and with a man by the name of William Marshall, and with a colored man by the name of Robert Brown." The declaration alleged special damage, viz. that one Robert P. Quintard refused to suffer the plaintiff to inhabit or dwell in his house ; and that one William Marshall would not permit the plaintiff to come to his house, and refused to furnish her with meat and drink, occasioned by the speaking of the words.

On the trial of the cause, it was proved, that the defendant had said, " that she was a thief, that she was fond of men, that she was a bad woman, a very bad woman ; that Phineas Barrett, Seth Palmer and others, were in the habit of visiting her frequently at her house ; that even Robert, a black man, had been so much in the habit of going to the plaintiff's, that the neighbors laughed at him about it, and that Robert avoided

ALBANY,
Oct. 1828.

Olmsted
v.
Miller.

the house in consequence of it." The witness who testified to these words further stated, that the wife of witness was present at the conversation, and the defendant said to her, that he would advise her to look to her husband, and that if he (the defendant) was in her place, he would not like to let the witness go to the plaintiff's house very often. He further testified, that much was said at that time by the defendant; that he could not give the precise language made use of, but that he understood the defendant, and any person hearing him would have understood him, as charging the plaintiff with prostitution, and that she had had carnal and sexual intercourse with Phineas Barrett, Seth Palmer, Robert, the black man, and others.

As to the special damage: it appeared by the testimony of one witness, that after the speaking of the words, the plaintiff was at a public inn transacting business, and desired dinner to be provided for her; that the landlord spoke to his wife, who refused to provide the dinner, saying, she would not have a woman of such a character in the house. Dinner, however, was provided by some member of the family, but the plaintiff was not permitted to come to the table with the family, which refusal was in consequence of the speaking of the words by the defendant. Another witness testified, that he had agreed to take the plaintiff into his family to reside with him; but that in consequence of the reports in relation to her, he had refused to permit her to become an inmate of his house, until she cleared up her character by commencing a suit for the slanders uttered against her. It appeared probable, however, that this conversation took place previous to the speaking of the words proved on the trial.

The defendant's counsel moved for a nonsuit on the grounds, that the words had not been proved as laid in the declaration, nor had any special damage been shewn; which motion was overruled; and the court instructed the jury, that the evidence was sufficient to entitle the plaintiff to recover. The jury found a verdict for the plaintiff, with $500 damages; for which, and the costs of suit, judgment was rendered.

ALBANY,
Oct. 1828.

Olmsted
v.
Miller.

*J. A. Collier*, for plaintiff in error. The words proved did not support the charges in the declaration. The rule on this subject is laid down by this court in 5 *Cowen*, 515. The words in which the slander was conveyed, must be stated in the declaration, and the declaration must be substantially proved. There was no special damage shewn within the meaning of the rule. The damage must be the consequence of the speaking of the words. (*Starkie's Ev.* 847, 872, 3. 8 *East*, 1. 1 *Chitty's Pl.* 386, 389.) In the one instance attempted to be proved, the plaintiff sustained no loss; in the other, the inconvenience suffered was previous to the speaking of the words.

*J. L. Wendell*, for defendant. In actions of slander, it is sufficient to prove the substance of the words charged. The only restrictions are, that the sense and manner of speaking be the same. (*Esp. Dig. N. P.* 521. *Buller's N. P.* 5.) The words as laid in the declaration, and as proved on the trial, charged prostitution.

Special damage was not necessary to have been proved. Words are in themselves actionable, when the natural consequence of the speaking of them is a damage. (6 *Bacon's Abr.* 205.) When they operate to exclude a person from society, they have always been held actionable. (*Esp. Dig. N. P.* 498, *and cases cited.*) What words can have a greater tendency to exclude from society, than to charge a woman with incontinence? In *England*, they are not actionable in the civil courts, because punishable in the *ecclesiastical courts*; which is the only reason given in the English cases for not sustaining the action. (*Starkie on Slander*, 163 *to* 166.) During the time of the commonwealth, when the ecclesiastical jurisdictions were abolished, words charging incontinence were held actionable. (*Hardress*, 107.) This point, though raised, was not considered by the court in *Buys and wife* v. *Gillespie*, (2 *Johns. R.* 115;) and in *Brooker* v. *Coffin*, (5 *Johns. R.* 188,) it was not agitated. It is, therefore, not *res judicata*. If such proof is necessary, special damage was sufficiently shewn in this case. The most trifling loss sustained in consequence of the slander, will entitle the

ALBANY,
Oct. 1823.

Olmsted
v.
Miller.

party to support the action. (1 *Taunt.* 39. 8 *T. R.* 130. *Cowper,* 277.) The insult offered to the plaintiff at the inn, was more grievous than a pecuniary loss.

*By the Court,* SAVAGE, C. J. It is said in *Buller's N. P.* 5, that "it was formerly holden, that the plaintiff must prove the words precisely as laid ; but that strictness is now laid aside, and it is sufficient for the plaintiff to prove the substance of them. However, if the words be laid in the third person, proof of words spoken in the second person, will not support the declaration." This rule was adopted by this court, in *Miller* v. *Miller,* (8 *Johns. R.* 74.) In that case, the words laid, were, " My watch was stolen out of the widow Miller's (plaintiff's) bar, and Tina Miller took it, and her mother (plaintiff) concealed it." The proof was, that the defendant said that his watch had been stolen from him in the plaintiff's bar room, and that he had reason to believe that Tina Miller took it, and that her mother (the plaintiff,) concealed it. The court, after recognizing the rule above cited from *Buller,* held that there was no variance ; that the assertion, that he had reason to believe that one took and the other concealed, is equivalent to the charge, that the one took and the other concealed it ; and that the charge of concealing must be construed by connecting it with the previous words, which averred that it had been stolen ; and that so construing the words, they imported criminality.

In *Fox* v. *Vanderbeck,* (5 *Cowen,* 513,) the words laid were, " You are perjured, and I will put you into the state prison." " He has sworn false and perjured himself, &c." " He swore to an absolute falsehood, and he has perjured himself." The proof was, that while the plaintiff was testifying, the defendant interrupted him, and told him it was not so. He requested the justice to keep the minutes of the plaintiff's testimony, and afterwards demanded them, and said he wanted them to prosecute for perjury; that he thought he should prosecute the plaintiff for perjury. We held that though the words proved were actionable, yet they did not support the declaration ; that the rule laid down in 2 *Phil. Ev.* 97, is correct, that the words proved, must be proved as laid ;

Olmsted
v.
Miller.

and it will not be sufficient to prove equivalent words of slander. That in the language of Lawrence, justice, in *Mailland* v. *Goldney*, (2 *East*, 438,) "though the plaintiff need not prove all the words laid, yet he must prove so much of them, as is sufficient to sustain his cause of action ; and it is not enough for him to prove equivalent words of slander."

It is important that this rule be adhered to, that the defendant may know what he is to meet ; and that he may not be held accountable for the misunderstanding of witnesses, as he might be if they were permitted to testify to the import of his words. The court and jury are to construe his words, and not the witnesses. I am therefore of opinion, that the proof in this case did not sustain the declaration. The first charge is that she had connection with Phineas Barrett. The proof is, that Phineas Barrett and others were in the habit of visiting her frequently. Defendant had just before said, that plaintiff was fond of men, and was a very bad woman. These words, although they may be said to be equivalent to the charge of having connection with P. B., yet, within the rule heretofore established, they are not the same in substance. The same remark is applicable to the other charges. The same idea is conveyed in the words charged and those proved ; but they are not substantially the same words, though they contain substantially the same charge but in different phraseology. The special damage shewn, is probably sufficient. (1 *Taunt.* 39. 8 *T. R.* 130.) The plaintiff was refused civil treatment at a public house, in consequence of the slanderous words spoken by defendant. She was also refused the hospitality and protection of a friend in consequence of similar slanders ; but that loss is not proved to have been the consequence of the words spoken by the defendant.

On the whole, I am constrained to say, that the plaintiff in the court below did not prove the words laid in her declaration, and, therefore, ought not to have recovered.

Judgment reversed, and venire de novo to Westchester common pleas.