By the Court,%

Bronson, J.
As all of the counts alleged the speaking of words which are actionable per se, the defendants could not demur; and the question was well made on the trial, whether the action in its present form could be maintained for words which were only actionable on proof of special damage..
When the words charged are not actionable in themselves, the plaintiff must allege and prove that by reason of the slander he has sustained some pecuniary damage. \ It is not enough that he has suffered pain of mind, lost the society or good opinion of his neighbors, or the like," unless he has also been injured in his estate or property. It is enough, however, that the slander has prevented the party from receiving something of value which would otherwise have been conferred, though gratuitously. This question was debated in the Exchequer Chamber in *313 Moore v. Meagher, (1 Taunt. 39,) which was an action on the case for defamation by words imputing incontinence to the plaintiff, who was a female. The declaration alleged that the plaintiff had before been received and entertained in the houses of her friends, and been found and provided by them with meat and drink gratuitously, to the great reduction of her necessary expenses of living and maintaining herself, and the great increase of her riches; and that by reason of the speaking of the words, she had lost all those valuable benefits, and been obliged to incur a much greater expense in her necessary living and support, to wit, the annual amount of £100. After verdict and judgment for the plaintiff, error was brought in the exchequer chamber; and it was urged that no legal damage was alleged. Sergeant Curwood said, if this action lies, no words are not actionable with the aid of an ingenious special pleader. But the judgment was affirmed. Mansfield, Ch. J. said there was special damage ; the words had deprived the plaintiff of an income derived from the bounty of others, which now, after verdict, we must assume would have sontinued if the words had not been spoken. • He said the case was not distinguishable from- Hartly v. Herring, (8 T. R. 130.) In that case the plaintiff was a dissenting minister, and in consequence of the slander he had been turned out of the chapel where he had before preached, and lost the gains and emoluments of his office. In both of these cases the plaintiff had suffered a pecuniary loss; and they go as far .in upholding the action on the ground of special damage as any of the decisions in the English courts.
In Bradt v. Towsley, (13 Wend. 253,) a female had been charged with being a prostitute, and the declaration alleged, among other things, that by reason of the speaking of ■ the words the plaintiff suffered and underwent great pain and anguish, and was hindered and prevented from transacting her necessary affairs and business, to her damage of $5000. This was held a sufficient allegation of special damage on the authority of Moore v. Meagher. Savage, Ch. J. said, “ she does not indeed allege, in terms, a pecuniary *314 loss, but alleges that which must necessarily involve such loss.” In Olmsted v. Miller, (1 Wend. 506,) it was said that the proof of special damage was probably sufficient; but the decision turned on another point. In Williams v. Hill, (19 Wend. 305,) the plaintiff, who was an unmarried female, had, in consequence of the slander, been forbidden the house of her uncle where she had been a welcome visitor; and on the authority of Moore v. Meagher, this was held such legal damage as would sustain an action on a charge of incontinence.
None of the cases have gone further in sustaining the action on the ground of special damage than those I have mentioned; and they all proceed upon the assumption that the plaintiff had sustained some pecuniary loss in consequence of the slander.
Another rule in these actions is, that the damage must be the natural and immediate consequence of the speaking of the words. (Vicars v. Wilcocks, 8 Hast, 1. Ashley v. Harrison, 1 Esp. R. 48. Stark. on Stand. 168. 2 Phil. Ev. 249.) A man is not responsible for all the remote and possible consequences which may result from his act, although he may be a wrong-doer.
/ Applying these rules to the case in hand, I do not see now this action could be sustained, even if Mrs. Beach were a feme sole and was suing as such. The allegations /that she suffered pain of body and mind, that her neighbors 'shunned her, that she was turned out of the moral reform society, that her husband abandoned her and the like, do not show any pecuniary loss, or legal damage. The wrongful act of the children in throwing missiles into the house, and calling Mrs. Beach hard names, is quite too remote a consequence of the slander to be charged to the account of the defendants. It is like the hypothetical case put by Lord Ellenborough in Vicars v. Wilcocks, (8 East, 1,) where, in consequence of the words, persons assembled and seized and threw the plaintiff into a horse-pond by way of punishment for his supposed transgression. His lordship enquired, whether any case could be mentioned of an *315 action of this sort sustained by proof of an injury occasioned by the tortious act of a third person. No case was mentioned ; and it was held that no action would lie where the special damage was, that a third person, in consequence of the words, had wrongfully discharged the plaintiff from his employment before his term of service had expired. The act of the employer was not the legal and natural consequence of the words spoken by the defendant.
But some damages are stated, which, if they were properly laid, and Mrs. Beach were a feme sole, would be sufficient to support the action. Persons who had before been accustomed to receive and provide for her gratuitously, refused after the slander to do so any longer until she should clear up her character ; and two persons in particular are mentioned who had withheld their former bounty. There is, however, a difficulty in relation to these averments. They are not put forward as the direct and immediate, but as a secondary consequence of the slander. The first thing that followed the speaking of the words was the abandonment of the wife by her husband, leaving her destitute ; and then Smith, after providing for her for a time, finally withheld his bounty; and Reynolds refused any longer to receive her as a welcome guest in his family. This objection applies only to the first count.
The second count is open to another objection. It alleges that, the wife for a long time before, and at, and after the time of the speaking of the words, lived apart from her husband under a deed of separation; and thereby she was obliged to maintain and support herself; and thereby she lost the benefit of the society and hospitality of her friends who had been in the habit of entertaining her gratuitously ; and thereby Smith finally withheld his assistance. The damages which the wife sustained are not alleged to have resulted from the speaking of the words; but from the fact that she lived apart from her husband under a deed of separation. The other averments in this count are, that the plaintiff was turned out of the moral reform society— that she was pained and enfeebled in mind and body—and *316 that the children assailed her with missiles and opprobrious epithets ; which, as we have already seen, are not sufficient allegations of special damage. They either fail to show any pecuniary loss, or seek to charge the defendants with consequences which are too remote.
There is a further and a fatal difficulty in the case. The suit, as to the words not actionable per se, should have been brought by the husband alone. When words spoken of the wife are actionable of themselves, or when the wife suffers any other injury, as a battery or imprisonment, she must join with her husband in seeking legal redress. The declaration concludes to the damage of both, for'the action survives to the wife if the husband die before the damages are recovered. But when words spoken of the wife, are only actionable on proof of special damage, the husband must sue alone. (Stark, on Slander, 151, 159, 60. Coleman et ux. v. Harecourt, 1 Lev. 140. 1 Chit. Pl. 83,4, ed. ’37. And see Lewis v. Babcock, 18 John. R. 443; Russell et ux. v. Come, 1 Salk. 119, and note (b), Evans' ed. ; 2 Kent, 180, 4th ed.) Legal damages, to support the action, must be such as result to the husband, and they should be so laid in declaring. He is bound by law to provide support and maintenance for the wife; and if she is deprived of the gratuitous aid of friends in consequence of the slander, the damage, in a legal point of view, results to the husband.
The fact that the plaintiffs lived apart under a deed of separation Cannot, I think, affect the question. The husband was still bound to provide for the wife; and what she lost in the way of support in consequence of the slander, was in judgment of law the loss of the husband.
New trial denied.