Curia, per O'Neall, J.
The first ground of appeal is, that the words were not proved on the trial as laid in the declaration. The rule is now well settled, that if the words be proved substantially as laid, it will be sufficient; Hogg ads. Wilson, 1 N. & McC. 216. So too, “ where the words are, in themselves, actionable, it is sufficient to prove some of them which are actionable, provi *581 ded they be proved precisely as laid Stark, on Slander, ch. 25, m. p. 350. Comparing the words proved with those laid in the declaration, it is plain that both these rules have been complied with. The words laid in the first and second counts — “you swore a lie,” “he swore a lie,” were proved precisely as laid. Most of the words laid in the third and fourth counts were proved substantially.
The counsel for the defendant do not deny this; but they contend that Giles Martin, Esq., before whom the false oath was taken, who is described in the declaration as a justice of the peace, was not, in fact, a justice of the peace, but a magistrate; inasmuch as, by the Act of 1839, the office of justice of the peace was abolished after the 1st March, 1841, and that of magistrate substituted. It is a sufficient answer, to say that no such ground was taken on the trial; nor is any such ground indicated in the notice of appeal. The trial, it seems, took place in October, 1841 ; there is, however, no time laid in the declaration, and the proof certainly corresponded with the allegation in the declaration; viz: that Giles Martin was a justice of the peace, at the time of the trial of the case in which the plaintiff was sworn. The declaration alleges that he had jurisdiction of the case. After a verdict, the legal implication is, that all these matters were proved as laid, and therefore, no advantage can be taken of them. In 1 Tidd Pr. 451, it is said, “ a verdict will aid the omission of that which was necessary to be proved at the trial ; and without which, the jury could not have found for the plaintiff.” In this case, unless the oath of the plaintiff had teen taken before one clothed with legal authority to administer the oath and try the case in which he was examined, the jury could not have found the verdict which they did. Such a verdict being found, we are bound to conclude, either that the proof was exactly according to the averment in the declaration, or, if that was defective, that the proof made out the case, and supplied the defect.
The second ground is, that the words are not actionable. There can be no doubt, that with the averment and colloquium in the first and second counts, the words laid in *582 them impute perjury. They have been proved as laid ; all the averments have been sustained by the proof. The materiality of the oath is shewn by adverting to the fact, that the issue before the magistrate was, how much wheat was sold and delivered by Dennis ? The plaintiff proved, as defendant alleged, one bushel too much — and for that, judgment was given. Hence, the swearing, (if false) was on the very point in issue. The words in the third and fourth counts, and those proved under them, are, I think, clearly actionable. Take the words proved by Sample : “ you get your living by sneaking about, when other people are asleep“ what did you do with a sheep you killed ?” “ did you eat it ?” “ it was like the beef you got negroes to bring you at night ?” “ where did you get the little wild shoats, you always have in your pen ?” “ you are an infernal roguish rascaland there cannot be any doubt about the intention of the defendant to charge larceny in more instances than one. In Davis vs. Davis, 1 N. & McC. 290, the words were spoken of a merchant; they were, “ you have got my money upon your shelves; you are a damned rogue.” These words, without any preparatory averment or colloquium about the plaintiff’s trade or business, were held, of themselves, to point to the plaintiff’s business ; and, in themselves, to make an actionable imputation. The case before us, unquestionably, is much stronger.
It is not necessary that . the words, in terms, should charge a larceny. If, taking them all together, in their popular meaning, such is the necessary inference, then there is no doubt that they are actionable. In Davis vs. Johnston, 2 Bail. 579, the words were, “ tell him he is riding a stolen horse, and has a stolen watch in his pocket they were held to be a plain charge- of horse stealing and larceny. .The words here, beyond all doubt, as plainly point to sheep stealing, and stealing beef. But if the words were doubtful and ambiguous, the plaintiff had the right to inquire of the by-standers, how did you understand the words ? and if they said they understood them as charging larceny, and such an understanding might fairly have been received from the words — it would pre *583 vent a pou-suit, and make it necessary for the jury to inquire, did the defendant use the words in the offensive sense in which the hearers understood them 1 This legal position is, however, denied by the defendant’s third ground for a new trial ; it is, hence, necessary to shew that it is fully sustained. In 2 Stark, on Slander, (m. p. 52,) it is laid down as law, that “ where the words are spoken in a foreign language, or where the terms are ambiguous, and it is doubtful in what sense the speaker intended them, the question is, in what sense the hearers understood them ; and if, where words may have two meanings, the hearers understood them in an actionable sense, the action is maintainable ; for the slander and damages consist in the apprehension of the hearers.” Mr. Starkie cites, for this position, Fleetwood vs. Curley, Hob. 267; and on turning to this venerable and accurate Judge and Reporter, the case iully sustains it. Our cases maintain the same doctrine. In Fisher ads. Rotereau and wife, 2 McC. 189, the words were, “ a thief,” “ a bloody thief.” In that case, the witness proving the publication was asked in what sense she understood the words. Judge RichardsoN, who delivered the opinion, says, “ but they (the words) do ex vi termini import felony, and are slanderous. And whether spoken in another sense or in mere passion, depending upon intention, was the subject of evidence, and was fairly submitted to the jury.” In Davis vs. Johnston, 2 Bail. 579, the rule is stated as follows: if words are susceptible of two meanings, one imputing a crime, and the other innocent, the latter is not to be adopted, and the other rejected, as a matter of course. In such a case, it must be left to the jury to decide in what sense the defendant used them. Their conclusion must be formed from the whole of the circumstances attending the publication, including the sense in which the witnesses understood the words.” The case of Hugley vs. Hugley, (Hughey vs. Hughey, is the true name of the case,) 2 Bail. 592, in no way conflicts with Davis vs. Johnston ; its rule, that “ words are to be construed in the popular sense in which the rest of the world naturally understand them,” is the rule also laid down in Davis vs. Johnston ; and a resort to the witness *584 es, for their understanding of the charge, is one means of ascertaining how “ the rest of the world understand them.''1 The case of Olmstead vs. Miller, 1 Wend. 506, when rightly understood, does not conflict with our cases.
The witness proving the publication, said he could not give the precise xvords, but that he understood the defendant — and any person hearing him, would have understood him — as charging the defendant with prostitution, <fec. It is in reference to this, that Savage, C. J. says, it is important that the rule, that the plaintiff should prove so much of the words laid as will sustain his cause of action, should be adhered to, “ that the defendant may know what he is to meet; and that he may not be held accountable for the misunderstanding of witnesses, as he might be, if they were permitted to testify to the import of his words. The court and jury are to construe his words, and not the witnesses.” There is no doubt that the dictum of C. J. Savage is good law. It requires that the words used by the defendant should be proved ; but it by no means excludes the position, that after the words are proved, if they be ambiguous or uncertain in their meaning, the witness may be asked, how he understood the words thus proved. Nor does the case of Gibson vs. Williams, 4 Wend. 320, interpose any obstacle. That case merely afflrms that the opinions of witnesses, that the plaintiff was meant and intended by the words, are not competent evidence. That may be law, and still it does not affect this case' — for it does not rule, that when the words are capable of two meanings, one charging the plaintiff, and the other not, the witness may not say how he understood them. After a full review of the cases, I am satisfied that the witness was allowed, very properly, to say in what sense he understood the defendant to use the words; and having answered, that he understood him, by the words he used, to make a charge of larceny, there can be no reason why we, after a jury have concurred with the witness, should ■ say the words were used in some innocent sense, and are, therefore, not actionable.
The first and second grounds of the defendant’s motion for a new trial, are certainly misconceived. .-The action *585 of slander is intended not only to recompense a plaintiff for an injury done to his character, but also to punish the • defendant for his malice. Any evidence which shews that the slander has been again and again repeated, is competent to prove malice. The greater length of time in which the defendant has repeated his publications, evidences that his words have not been the result of passion* and shews a deliberate purpose to injure the plaintiff. It is true, if the plaintiff had not proved a publication within six months before action brought, he could not have given anterior publications in evidence ; for the statute might have cut them off. But having made a case, to which the statute did not and could not apply, the plaintiff, to aggravate the damages, might prove the anterior publications, as well as publications after suit brought, and thus shew previous, subsisting, and continuing malice» So too, proof shewing that the defendant was actuated by a purpose purely selfish and mercenary, in uttering 'the slander, was further evidence of the defendant’s evil purpose. The testimony, that when the plaintiff bought his settlement near the defendant, he was dissatisfied with him, and from that time, never spoke well of him, and that he wished to compel him to remove, were certainly facts proper to go to the jury, to enable them to say how far the mean and mercenary motive of coveting the plaintiff’s land, prompted the defendant to utter the slander. And if they found-it to be the beginning of his malice towards the plaintiff* it would very properly make him a fitter subject for vindictive damages.
There is nothin in the fourth ground, when it is understood, It may be, that the defendant’s question to Col. Denny, how much did Wade Dennis direct you to claim from the defendant ? was waived. But in fact, the same thing was asked in the question, how much did you claim before suit brought1? For Denny was the guardian of the negro, and said, of his own knowledge, he knew nothing of the claim. But the testimony objected to in the fourth ground, did not come out until after Giles Martin was examined, and was in reply to it. Martin proved for the de *586 fendant, that Dennis, the free negro for whom the recovery was had by Denny, on Morgan’s oath before him, told him the judgment was for too much, and left with him one dollar to be refunded to the defendant. As this declaration of Dennis tended to shew that Morgan had sworn falsely, it was surely competent to destroy it, by shewing that he had made other statements. So far as the declaration was to be regarded, it stood upon the same footing as if Dennis had, himself, on the stand, made the statement. If it had been possible for him to be examined, and he had made such a statement, his declarations made at other times and to a different purpose, would have been perfectly competent to shew how far his statements should be credited, or discredited. The same rule holds, as to his declarations.
The fifth ground, which complains that the damages found are excessive, cannot help the defendant. Having known both parties before they left Newberry, I was, perhaps, more than ordinarily anxious that exact justice should be done; and in that spirit I presented every consideration to the jury, to induce them to find a.much smaller verdict than they did find for the plaintiff. But it was all in vain — for the malice of the defendant was apparent; it was, too,, probable, that his desire to possess Morgan’s land, had led him to publish many of the slanders which he did, during a course of several years. Even after the suit, he had avowed the truth of his words, and his intention to prove them. On the trial, although he did not justify, he approached it as near as he could, and seemed to say, although the plaintiff may not be legally guilty, yet, I then had, and still have, good grounds to believe him to be guilty. So, too, the fearful onslaught made on the plaintiff’s character, if the jury believed, as they probably'did, that the defendant’s own slander was the principal cause of the reproach cast upon the plaintiff, was a very aggravating circumstance, especially when it was shewn by many witnesses oi character and intelligence in the neighborhood, that the plaintiff had so lived, after the beginning of the reports against him, as to shew *587 that they had no just foundation. Under all these circumstances, we cannot say that too great a sum has been found against the defendant; it may teach him to bridle his tongue for the future.
The motions for non-suit and new trial, are dismissed.
Richardson, Evans and Wardlaw, JJ. concurred.