## BOND v. BREWSTER.

*(Common Pleas of New York City and County, General Term.   April 7, 1890.)*

SLANDER—PLEADING AND PROOF.

 In an action for slander the complaint alleged that defendant said of plaintiff: "We have not paid him any commissions.   We have lent him money which he has not repaid.   We have done printing for him for which no charge has been made;" that the words were spoken in answer to an inquiry as to whether commissions had been paid by defendant to plaintiff, and were accompanied with "certain inflections of voice, glances, gestures, and movements indicating the ironical sense of the words, * * * and explaining the true meaning of the language used to be that the said loan and services were, in fact, payments as commissions or rewards;" that such conversation took place between defendant and an officer of plaintiff's employer; and that the result thereof was that plaintiff was discharged from his position.   No evidence was offered as to the ironical meaning, inflections of voice, gestures, etc.   *Held,* that a judgment for plaintiff could not be sustained.   DALY, J., dissenting.

Appeal from trial term.   An action for slander by Addison Curtis Bond against Charles Brewster.   The alleged slanderous words set forth in the complaint are that defendant said of plaintiff: "We have not paid him any commissions.   We have lent him money which he has not repaid.   We have done printing for him for which no charge has been made."   It is further alleged in said complaint that said words were spoken in answer to an inquiry as to whether commissions had been paid by defendant to plaintiff, and that the words above quoted were accompanied with "certain inflections of voice, glances, gestures, and movements indicating the ironical sense of the words, * * * and explaining the true meaning of the language used to be that the said loan and services were in fact payments as commissions or rewards."   At the time when these alleged words were uttered, plaintiff was in the employ of the Waterbury Watch Company; and it is charged that such conversation took place between defendant and an officer or agent of said company, and that the result thereof was that plaintiff was discharged from his position.   There was a verdict for plaintiff for $500.   From the judgment entered thereon, defendant appeals.

Argued before LARREMORE, C. J., and DALY and BISCHOFF, JJ.

*Miller & Savage,* (George W. Miller, of counsel,) for appellant.   *Henry M. Love,* (C. De Hart Brower, of counsel,) for respondent.

LARREMORE, C. J.   It is well settled that in actions for slander the words complained of "must be proved as laid," and that it is not sufficient to prove equivalent language.   "Words to the same effect are not the same words.   The plaintiff need not prove all the words on the record, yet he must prove so much of them as will be sufficient to sustain his cause of action."   2 Phil. Ev. 97, quoted with approval in *Fox* v. *Vanderbeck,* 5 Cow. 513.   This same rule was applied in *Olmstead* v. *Miller,* 1 Wend. 506, which was a case in which special damage was alleged; the words declared upon not being actionable *per se.*   I cannot discover that the principle established by the early cases has ever been departed from or seriously modified.   These authorities are cited, apparently with approval, in *Lynde* v. *Johnson,* 39 Hun, 12.   The evidence offered before plaintiff originally rested was insufficient to prove the alleged slanderous words "as laid."   Such evidence consisted entirely of plaintiff's own testimony, and was to the effect that he called on defendant, and said, "I understand that you have told Mr. Merritt that I had exacted a commission from you; and you know it is false, and I don't understand why you should make it," and that defendant confessed that he had used this language or its equivalent, and apologized for what he had said.   The only thing, therefore, offered, in chief, in support of the cause of action, was an alleged admission of defendant that he had uttered something entirely different in phraseology from what was charged in the complaint.   Indeed, plaintiff himself testified that he did not state in what manner the commission

was claimed to have been given. There was, therefore, down to the time of the motion to dismiss, at the close of plaintiff's case, a failure of proof to support the cause of action. The trial judge, however, refused a nonsuit, and defendant was examined; and, after he had rested, Mr. Merritt, the gentleman with whom the conversation took place, was called in rebuttal. I fail to find, even in his evidence, sufficient to make out, with what had gone before, a *prima facie* case. He said that defendant told him: "We have done a little work for Mr. Bond, and loaned him some money which he has never paid." But he failed to show anything tending to support the innuendo relied on. There is no proof of the alleged ironical inflections of voice, glances, gestures, and movements. There is nothing to indicate that these words were not spoken in their ordinary sense, with no intention that any different meaning should be drawn from them. The court directed the witness to state the whole conversation, and the only material thing added was that Mr. Brewster said he did not expect to be paid for the work done or money loaned. As far as we can judge from the evidence as it appears in print, the natural impression for a fair-minded man to draw from the whole interview was that defendant did not intend to convey the idea that the printing and money loaned were in lieu of reward or commissions for business influenced in defendant's favor by plaintiff. Certainly the evidence falls short of affirmatively proving an intent to slander. The whole gist of this action is not in words which of themselves were innocent, but in an alleged something, emanating from defendant, in addition to and accompanying the words. Even if Mr. Merritt got an erroneous impression, there is nothing to show that any utterance or action of defendant is responsible for it. When he called upon defendant, he was evidently prejudiced against plaintiff by statements that had been made to him by Mr. Thompson. If the words uttered by defendant were colored in Mr. Merritt's mind by Thompson's previous charges, certainly defendant should not be held liable for the unjust imputation, unless he himself said or did something by which he intended, directly or by innuendo, to slander the plaintiff, or from which such imputation might fairly be inferred. The case is barren of any evidence of this kind, and, for the reason that there was a total absence of proof to support the cause of action, the complaint should have been dismissed; and the judgment appealed from should be reversed, with costs.

BISCHOFF, J., concurs.

DALY, J., (*dissenting.*) The plaintiff was in the employ of the Waterbury Watch Company as advertising agent, editor, and publisher of a monthly publication issued by that company. He gave the work of printing the paper to the firm of Fleming, Brewster & Alley, of which defendant was a member, from July to November, 1888, when, owing to their delay in doing the work, he took it away from them because his employers charged him with neglecting the business. The defendant called upon plaintiff about the matter, and when he left was very angry, and said that he would see that plaintiff regretted his action. After this, Mr. Merritt, the manager of the Waterbury Watch Company, called upon the defendant and told him that he was upon an investigating tour in relation to Mr. Bond, (the plaintiff;) asked if he knew why the work was taken away from his house. Defendant said he did not know, exactly; Bond had claimed the company was dissatisfied at his not getting the paper out promptly, and had taken it away on that account. Merritt then said: "Have you ever paid Bond any commission?" Defendant said: "No." Merritt then said: "Well, I have heard some things about Mr. Bond that are with regard to commissions that I was investigating. I thought I would come up, and see if you knew anything about why he took the work away,—whether he had any idea about it." Merritt then told defendant a circumstance about a Mr. Thompson, who claimed that he used to

do the company's work, and afterwards there was a job that the company had done, which Merritt supposed Thompson was doing, but it was given to somebody else. Merritt told defendant that he spoke to Thompson, who said: "We don't pay commissions to any of your employes is the reason we don't get your work." That Merritt asked him what he meant by that, and Thompson said he had been compelled to pay the company's advertising agent, and, as they had but one, and that was Mr. Bond, (the plaintiff,) Mr. Merritt supposed it was Mr. Bond. Upon hearing this, the defendant said to Merritt: "We have done a little work for Mr. Bond, and loaned him some money which he has never paid." Also, that "he did not expect to be paid for the work done, and money loaned to Mr. Bond." Merritt went away, consulted with his "folks" in relation to it, and, as he was about going to Europe in a short time, "made pretty short work of it," and discharged Mr. Bond. The defendant was perfectly calm during this interview. Merritt was asked on cross-examination, by defendant's counsel, whether Mr. Brewster did not speak of the work done for Mr. Bond as one of the ordinary courtesies of business, but Merritt's answer was: "It is difficult for me to say that he did." Subsequently to the plaintiff's discharge from the employment of the company, he called upon defendant, and said: "Brewster, I don't understand how you could permit yourself to induce Mr. Merritt, the manager of the Waterbury Company, to believe that I had withdrawn work from you because you declined to pay a commission, or give me some consideration for it; nor can I understand that you induced him to believe that you ever gave me a consideration. I understand that you told Mr. Merritt that I had exacted a commission from you; and you know it is false, and I don't understand why you should make it." The defendant was confused for a moment, and did some figuring on the desk with his pencil, and then turned to the plaintiff, and said: "Well, Bond, I did wrong, I admit. I don't know why I should have said that you received a commission from me, or why I should have induced Mr. Merritt to believe it, when there was no truth in it." Plaintiff then said: "Mr. Brewster, I think you don't, or didn't then, appreciate the injury you were doing me. Not only was that the cause of my losing my position, but it has also seriously injured my reputation." To which defendant answered: "I regret it very much. I was angry at the time I said it, and there was no truth in it."

The jury, the sole judges of the fact, have by their verdict established the truth of the evidence given on plaintiff's behalf where it conflicts with defendant's testimony; and from the facts, as detailed above by the plaintiff and Merritt, they were justified in finding that the defendant, out of a feeling of resentment towards plaintiff for having taken his work away, seized upon the opportunity offered by Merritt's inquiries to do the plaintiff an injury, by insinuating, if not openly charging, that he had exacted a commission, in the shape of gratuitous services and pretended loans, contrary to the duty he owed his employers. The words begin with a denial that commissions were exacted, but they were immediately followed by a statement of fact calculated to convey an exactly opposite impression; and spoken, as they were, to plaintiff's employer, with the knowledge that he was investigating alleged offenses of that character on the part of plaintiff, the words were certain to give the impression that the offense had been committed, and, being spoken of plaintiff in his capacity of employe, and with reference to his duties, they were actionable per se. Fowles v. Bowen, 30 N. Y. 20.

The evidence of Merritt substantially sustains the allegations of the complaint as to the words alleged to have been spoken. The words as set forth in the complaint are: "We have not paid him any commissions. We have lent him money which he has not repaid. We have done printing for him for which no charge has been made." No question can arise as to the proof substantiating the charge in the complaint. The appellant's objection on

this ground was not well taken. Nor can it be, with any show of reason, urged that the words were, considered in connection with the circumstances under which they were uttered, innocent, or that they did not impeach the integrity of plaintiff in his vocation, or were not defamatory in their nature. All appellant's arguments on this point are based upon the theory that the defendant expressly stated that plaintiff did not exact a commission, and that what was further said was the mere statement of a harmless fact; but the plain intent of the words was to accuse plaintiff of taking what was equivalent to a commission. It was as if defendant had said: "We have not paid him a commission directly, by way of a percentage upon the work, but we have done so indirectly, by making pretended loans which we do not expect to be repaid, and by doing work for which we do not expect any payment." The jury so understood the language, and no one could misunderstand it. As the words were actionable *per se*, it was not necessary to prove special damage. If it had been, however, the discharge of plaintiff from his employment seems to have been the direct consequence of the defendant's slander. He was charged with having caused plaintiff to lose his situation, and he did not deny it.

The exceptions were not well taken. There was no error in admitting evidence of plaintiff's business relations with his employers. As the alleged slander was with respect to his business and duties, how could he prove his case without such evidence? The language of the court, "I think it may be important to show that, as showing a motive which led to the utterance of the slander," in admitting the evidence, was not the subject of exception on the ground that the jury might regard it as an adjudication that a slander had been uttered. No evidence of slander had been then given, and the jury could not have construed it as referring to anything but the slander as alleged, but not yet proved.

Appellant argues an "exception at folio 21," but no such exception is in the case. There is an exception to the allowance by the court of evidence to show that the charges which Merritt told defendant one Thompson had made against plaintiff did not refer to the latter. Without this proof the jury might have regarded the plaintiff as actually guilty of the offense charged by Thompson, and I think it was proper to permit him to show that that charge was not true. The argument of defendant, however, is that the jury were influenced by it, as it tended to shift onto him the results of the words uttered by Thompson. But the judge, in allowing the testimony, expressly stated that defendant was in no way responsible for the truth or falsity of that statement, and that he should so charge the jury. But the evidence itself would not have the effect suggested by the appellant. It was merely the statement by Merritt that he had since learned that the charge of Thompson did not refer to plaintiff. The jury, therefore, might still consider that the discharge of plaintiff by Merritt was as much due to Thompson's charges as to defendant's, since it was only after the occurrence in question that he learned of plaintiff's innocence. Error is alleged with respect to a refusal to charge, to which defendant excepted, but the error is not pointed out on the brief, and upon reading the case I do not find any. The other exceptions in the case are disposed of by the conclusions arrived at above in respect to the main questions in the case. The judgment should be affirmed, with costs.