ELNATHAN L. SANDERSON, Respondent, *v.* WILLIAM CALDWELL and HORACE P. WHITNEY, Appellants.

If the application or meaning of the words in an alleged libel is ambiguous, or the sense in which they were used is uncertain, and they are capable of a construction which would make them actionable, although, at the same time, an innocent sense can be attributed to them, it is for the jury to determine, upon all the circumstances, whether they were applied to the plaintiff, and in what sense they were used.

In an action for libel, it is unnecessary for the plaintiff to prove affirmatively that he sustained damage in consequence of the libelous publication. The law not only imputes malice to the defendant, but presumes that damages have been sustained by the plaintiff in consequence of the unlawful act of the defendant.

In libel or slander, the plaintiff cannot, by innuendoes, extend the meaning of the words beyond what is justified by the words themselves, and the extrinsic facts with which they are connected.

In slander, where the words used have such a relation to the profession or occupation of the plaintiff that they directly tend to injure him in respect to it, or to impair confidence in his character or ability, when, from the nature of his business, great confidence must necessarily be reposed, they are actionable although not applied by the speaker to the profession or occupation of the plaintiff. When, however, they convey only a general imputation upon his character, equally injurious to any one of whom they might be spoken, they are not actionable, unless such application is made.

But, in an action for libel, the fact that the words used had reference to the profession or business of the plaintiff is not the substantive ground of the action; the actionable quality of the words used does not, in any case, depend upon that consideration.

(Argued April 10th; decided April 25th, 1871.)

APPEAL from a judgment of the late General Term of the second judicial district, affirming a judgment upon a verdict at the circuit in the county of Kings, rendered on the 8th day of February, 1869, in favor of the plaintiff. The judgment was for $5,000.

This action was for a libel published by the defendants in the Sunday Mercury.

The plaintiff was a lawyer, practicing in Brooklyn, and was also a candidate for member of Assembly; the libelous article was published two days before election, and was as follows: " Elnathan L. Sanderson, extra-radical candidate for Assembly from the third, fourth and eleventh wards of Brooklyn, did a good thing, in his sober moments, in the way of collecting soldiers' claims against the government, for a fearful per centage. The blood-money he got from the 'boys in blue,' in this way, is supposed to be a big thing, and may elect him to the Assembly on the 'loyal' ticket, although the soldiers and sailors are out in full force against him." The complaint alleged that the meaning of this article, was to charge the plaintiff with being in the habit of the use of spirituous liquors to excess, or to intoxication, and to such a degree, as to disqualify him from the transaction of his professional business, and of improperly, dishonestly and fraudulently obtaining money of and from the soldiers and sailors of his district; and, also, to charge the plaintiff with taking advantage of the soldiers and sailors in his professional capacity as a lawyer, and in making unfair, unreasonable and extortionate charges against them for professional services. He also claimed that he was a candidate for office, and that he was greatly injured in his professional business. Claim $20,000. No proof of loss, damage or injury to the plaintiff, professional or otherwise, was given. No proof of actual malice was made.

The defendants moved for a dismissal of the complaint, on the ground that the article was not libelous *per se*. At the close of the evidence, the defendants requested the court to charge, that no damages could be given by the jury for injury to the plaintiff in his professional capacity, there being no proof of any such damage. That under the proofs, the jury had no right to give punitive or vindictive damages. That the defendants had a right to oppose the election of the plaintiff, and advocate the election of any other person to the

office which the plaintiff sought, and criticise his acts. That upon the proof, the jury might find a verdict for mere nominal damages, and that such verdict would be a vindication of the plaintiff. All of which the court refused, and defendants duly excepted. The court charged, that it was for the jury to determine whether the article sued on, contained the charges which it is alleged by the plaintiff it does, against him, and this was duly excepted to. Defendants' counsel objected to the drawing of the jury, on the ground that there should be, at least, twenty-four names in the box from which to draw, a panel then being out in another case. Before the drawing of the jury was completed, the other jury came in and rendered a verdict. The defendants then moved that the names of those twelve be put in the box, and those already drawn on this jury, and that, from the whole, a jury be drawn. This was refused.

*Samuel Hand*, for the appellant.

*George G. Reynolds*, for the respondents. The article was clearly actionable. (*Webster* v. *Foster*, 11 Barb., 203; 6 Barb., 614.) It was not a privileged communication. (*King* v. *Root*, 4 Wend., 113.) Malice is inferable. (4 Wend., 113.) A want of professional integrity is imputed, and the words are actionable. (*Garr* v. *Selden*, 6 Barb., 416; reversed in effect, but on other grounds, in 4 Cow., 91.) A "high misdemeanor" is charged. (No. 12, U. S. Stat., p. 568, §§ 6, 7; No. 13 id., §§ 12, 13.) Words are to be taken in their natural meaning. (*Wright* v. *Paige*, 36 Barb., 438; 33 Bårb., 615.) In the matter of the objection to the jury, see 3 Seld., 451; 6 Wend., 549; 7 Cow., 382; 7 Wend., 422; 6 Cow., 584. Imputing want of integrity to a professional man is actionable *per se*. (6 Barb., 416; 13 Abb., 41, *et seq*.) Where a trial and general verdict have been had, the Court of Appeals can only deal with questions of law, upon exceptions duly taken, and cannot correct the errors of the jury. (14 N. Y., 310, 319, 321; 23 N. Y., 343; 30 N. Y., 319, 324;

31 N. Y., 50; 34 How., 254.)   Actual damage is not necessary to sustain a verdict for exemplary damages.   (4 Duer, 247; 9 Abb., 45.)

ANDREWS, J.   The court properly refused to instruct the jury that the article published by the defendant was not libelous.   That instruction would only have been proper in case it was incapable of a construction injurious to the plaintiff.

In an action for defamation, if the application or meaning of the words is ambiguous, or the sense in which they were used is uncertain, and they are capable of a construction which would make them actionable, although at the same time an innocent sense can be attributed to them, it is for the jury to determine upon all the circumstances, whether they were applied to the plaintiff, and in what sense they were used.

The publisher of a libel cannot escape liability by veiling a calumny under artful or ambiguous phrases, or by indirectly charging that which would be slanderous, if imputed in direct and undisguised language.

The language of the publication in this case, if capable of an innocent construction, is also clearly capable of a construction which would make it libelous.

To say of one, that in his sober moments he collected soldiers' claims against the government at a fearful per centage, is, or at least may be, equivalent to a charge of drunkenness, and of unjust and extortionate conduct in the prosecution of his business.

If the words " sober moments," in connection with the context, referring to the plaintiff as an " extra radical candidate " for the Assembly, could have been construed in an innocent sense, it was for the jury to ascertain the real sense in which they were used; and the jury having found for the plaintiff, the defendants are concluded from now alleging that the meaning they attributed to them was the true one.

It does not need the citation of authorities to show, that written words, charging another with being a drunkard and with extortionate charges for his services, are libelous.

They tend to degrade him in the estimation of the community, to deprive him of public confidence and the temporal advantages which naturally result from a reputation for honesty and sobriety.

The principal question in this case arises upon the instruction of the court to the jury, that it was a question of fact for them to determine whether the article for the publication, of which the action was brought, contained the charges which the plaintiff in his complaint alleged it contained against him. To this instruction the counsel for the defendants excepted.

The complaint, after averring that the plaintiff at the time of the publication complained of, was a practicing lawyer and a resident of Brooklyn, and after setting out the alleged libelous article, and the fact of its publication in the newspaper of the defendants in the city of New York, and making other averments not now material to be noticed, proceeds as follows: " That said defendants, in said libel referred to, meant the plaintiff in this action, and did by said libel charge and intend to charge the plaintiff with being in the habit of the use of spirituous liquors to excess or to intoxication, and to such a degree as to disqualify him for the proper transaction of his professional business, and of improperly, dishonestly and fraudulently obtaining money of and from the soldiers and sailors of his district, the 'boys in blue;' and did also in and by said libel charge and intend to charge the plaintiff with taking advantage of the soldiers and sailors in his professional capacity as a lawyer, and in making unfair, unreasonable and extortionate charges against them for professional services, and with compelling them to pay such charges."

The part of the charge of the court, to which we have referred, relates to the part of the complaint above quoted, and to sustain it the libel proved must, by its language alone or in connection with extrinsic facts proved, which lawfully

could be considered by the jury, have authorized the meaning to be attributed to it, alleged by the plaintiff.

It was unnecessary for the plaintiff, in order to sustain his action, to prove affirmatively that any damages were sustained by him in consequence of the libelous publication.

It would be quite impossible for a person whose character had been assailed by slanderous words to follow them and establish by proof all the injurious consequences, although it might be quite certain that injury had been sustained, which was not capable of definite proof.

The law, therefore, when the publication of the libel has been shown, not only imputes malice to the defendant, but presumes that damages have been sustained by the plaintiff in consequence of the unlawful act of the defendant.

But the plaintiff need not rest upon the inference and presumption of law in his favor, but he may show, with a view to enhance the damages, that the defendant in fact was governed in making the publication by an evil and malicious intent, and that particular damages, the natural proximate result of the publication, resulted from it.

Considering the language of the libel in connection with the extrinsic fact proved, that the plaintiff was at the time a lawyer engaged in the practice of his profession, it is a just inference that the words used related to him in his professional character. The plaintiff is spoken of as collecting claims of soldiers and sailors against the government.

Whether the collection of such claims is confined to lawyers, or whether some members of that profession decline to engage in that business, is immaterial, if, when undertaken by a lawyer, it is legitimate professional business, and imposes upon him the obligations of professional duty; and that such is the character of the business when undertaken by a lawyer, is not, we think, open to doubt.

The meaning of the words in an action of slander or libel cannot be extended by an innuendo beyond what is justified by the language and the extrinsic facts with which they are connected.

The charge against the plaintiff that he did a good thing in collecting soldiers' and sailors' claims against the government at a fearful per centage, and that the "blood money" he got in this way was supposed to be a "big thing," in connection with the fact that he was a lawyer, may fairly be construed as imputing to him unjust, dishonest and extortionate conduct in his professional capacity, and justifies the meaning attributed to it in the complaint.

The charge, that in his "sober moments" he prosecuted his business, authorized the inference that he was in the habit of the immoderate use of intoxicating liquors; and the natural tendency and result of such a habit, in a person engaged in any business, and especially in professional business, is to unfit him for the proper discharge of it.

The defendants, in judgment of law, intended to charge what their language implied, and to produce the injury which was the natural and proximate result of their act.

They may not, in fact, have had in mind the particular meaning charged by the plaintiff, or intended the special injury produced; but the law, for remedial purposes, adjudges that a wrongdoer intends all the natural and proximate consequences of the wrong, and administers punishment and allows compensation upon this presumption.

It is claimed, however, that special damages could not be recovered in this case for injury sustained by the plaintiff in his professional character, for the reason that the libel does not state or imply that the plaintiff was a lawyer, and, therefore, does not relate to him in that character; and for the additional reason that no actual damages to him in his profession were proved.

It is said by Chief Baron COMYN, that "words, not actionable in themselves, are not actionable when spoken of one in an office, profession or trade, unless they touch him in his office, profession," etc. (Action on the case for defamation, D, 27.)

In general, words of mere opprobrium, or charging general immorality not amounting to crime, are not actionable *per se*,

and the rule cited states the exception which has been uniformly recognized; but there is some confusion in the cases upon the point whether the words used must, in terms, be applied by the speaker to the office, business or profession of the person who claims to recover by reason of them, and whether, if not so expressly applied, they can be said to touch him in the special character named.

The rule derived from the authorities, and with which most of the cases can be reconciled, seems to be this: When the words spoken have such a relation to the profession or occupation of the plaintiff that they directly tend to injure him in respect to it, or to impair confidence in his character or ability, when, from the nature of the business, great confidence must necessarily be reposed, they are actionable, although not applied by the speaker to the profession or occupation of the plaintiff; but when they convey only a general imputation upon his character, equally injurious to any one of whom they might be spoken, they are not actionable, unless such application be made. (*Cawdry* v. *Higley*, Cro. Ca., 270; *Chaddock* v. *Briggs*, 13 Mass., 248; *Davis* v. *Ruff*, Cheves's Rep., 17; *Ayre* v. *Craven*, 2 Ad. & El., 2; *Dorley* v. *Roberts*, 8 Bing. N. C., 835; *Jones* v. *Little*, 7 Mees. & Wels., 423; Starkie on Slander, 118; 1 New Lead. Cas., 124.)·

Within the rule stated, if the slander had been verbal, instead of written, the plaintiff would have been entitled to recover damages for the injury sustained by him in his profession.

But the publication was libelous *per se*, without reference to the professional character of the plaintiff; and no authority has been cited, or has come to our notice, holding that the plaintiff cannot, in such a case, by extrinsic evidence, connect the libelous words with his professional character, and recover the natural and proximate damages to him, in his profession, resulting therefrom.

In an action for libel, the fact, that the words used had reference to the profession or business of the plaintiff, is not the substantive ground of the action.   The actionable quality

of the words used does not, in any case, depend upon that consideration.

We are of opinion that the plaintiff was entitled to recover for damages to him in his profession by reason of the libel, and that the jury could award such damages, without specific proof in respect to them.

The exception to the refusal of the court to charge as requested by the counsel for the defendants, that there being no proofs of malice beyond that which is implied from the publication of the article, the jury might find a verdict for nominal damages, and that such a verdict would be a vindication, was not well taken. The plaintiff did not attempt to justify the libel, nor were there any circumstances mitigating it, unless the fact that the plaintiff at the time was a candidate for office, may be considered in the nature of mitigation. The plaintiff was entitled to be compensated for the injury to his reputation, caused by the wrongful publication. His character was not impeached. In such a case, a nominal verdict would have been a denial of justice, and the court was not bound to assent to the suggestion of the defendant that such a verdict might be given. Nor would such a verdict have been a vindication of the plaintiff. It would have established that the charges were false, but at the same time it would have left it to be inferred that the plaintiff had no character to lose.

We see no error in the manner of impanneling the jury.

The judgment should be affirmed, with costs.

All concurring, judgment affirmed.