By the Court.—Curtis, Ch. J.
The evidence shows that the plaintiff was a person of good character, and keeping a large and respectable boardinghouse, which was a source of income and support for herself and her children, and that the publication complained of caused her injury, and damaged her business. Good character and respectability are elements of value in every worthy pursuit in life, and probably in few more so, than in the business conducted by the plaintiff. The law seeks to protect persons from being wrongfully deprived of them, and subjected to loss and injury.
The case shows, that the defendant’s newspaper was made the instrument of inflicting pain and injury, by this publication, which, without the personal knowledge or consent of the defendant was printed by the oversight of his servants.
It would be natural for almost any one, who had been thus made the instrument of injuring the character and business of a person situated as the plaintiff was, and so dependent upon good character and respectability, to hasten to restore to the person thus injured, as far as possible, her good name and reputation, and to do all that could be done, by publishing an explana *69 tion of the circumstance, and a retraction of the statement.
In the present instance, for reasons, if any, not appearing in the proofs, no retraction was published, and the answer states subtantially that the publication complained of, was, at the time thereof, “ true in substance and in facta defense not sustained by the evidence at the trial.
It was sufficiently shown at the trial, that the defendant was the publisher and'proprietor of the journal, and the law holds him responsible for whatever appears in its columns, although he neither authorized nor knew of the publication (Huff v. Bennett, 4 Sandf. 120).
The complaint alleges that the publication “ was a libel of the plaintiff, ” and that in her business as a boarding-house keeper she was damaged, and also in her credit and reputation. If the defendant was prejudiced by the averment being too general, he should have applied for an order that the plaintiff make her complaint more definite and certain (Van Wyck v. Guthrie, 4 Duer, 274).
As the publication did not designate the plaintiff or her business by name, she properly proved such extrinsic facts as showed that persons reading it and knowing her would apply it to her (Miller v. Maxwell, 16 Wend. 9). It was proper for the jury to determine from the evidence, whether the words were published of the plaintiff, and in what sense, if ambiguous, they were so published (Sanderson v. Caldwell, 45 N. Y. 398).
It was urged on the argument that there was nothing in the term “ blackmailing ” which is libelous, and that it has nothing in its primary and proper meaning which is libelous. It was however, conceded, that sometimes it is used in a different sense, and that in that sense it may be actionable. The words published should be construed in the sense in which they are understood by those who read them (Backus v. Richard *70 son, 5 Johns. 483). It is inconsistent with a due regard for the protection of the public from libelous attacks, that obsolete or antiquated and practically unused meanings of words should be searched for and studied out, to show that at some remote period of history they were not opprobrious, in order to shield a party publishing and using them in respect to another in that now only used and universally established sense, that holds him up to public reproach, and indignation. Mr. Hamilton’s definition of a libel, in his argument in People v. Croswell (3 Johns. Cas. 354), is referred to with approval in Steele v. Southwick (9 Johns. 215), and in following it, the courts of this State have avoided the embarrassments from varying definitions that have elsewhere arisen. In Weed v. Foster (11 Barb. 203), the principle upon which it rests was presented in this language by Harris, J.: “Is such a charge calculated to injure the character of the plaintiff, or to degrade him in public estimation % If it is, then the court is required to say, as matter of law, that the charge is libelous. No extrinsic fact need be stated to give point or meaning to the charge. The language of the alleged libel is to be understood in the ordinary and most natural sense.” The conclusion reached in Edsall v. Brooks (2 Robt. 34), “that the term ‘ blackmailing ’ is universally regarded as an unlawful act,” and is libelous per se, is one to be concurred in.
The testimony made it apparent that these words complained of were understood and applied by persons knowing the plaintiff and reading them, as imputing to the plaintiff disgraceful and degrading conduct. In their ordinary and most natural sense they indicate that the plaintiff’s house was the abode and harbor of a blackmailing .crowd, and the proprietress and its inmates are held up to public scorn and avoidance.
It is claimed that the damages, $10,000, are exces *71 sive. In. this case, the plaintiff was presented to the public, under a charge personally degrading and seriously injuring her business. The advertisement was the offspring of malice. The defendant, by its publication, inflicted a great injury upon a comparatively helpless and entirely innocent person. Ho apology and no retraction were published by the defendant, but on the contrary a justification was pleaded, which was unsustained by proof. The welfare of society requires that the infliction of purely wanton and cruel wrongs of this class, without an effort to repair or retract them, should not be passed lightly over. The circumstances of this case are such, that if properly before the jury their discretion in determining the amount of the damages should not be inconsiderately interfered with, on the ground of excessiveness.
A grave question arises, as to whether there was not testimony received at the trial, which should have been excluded. A witness,—Meredith L. Jones, Esq., counselor-at-law,—testified to the effect that shortly after January 1, 1877, he was recommended to the plaintiff’s boarding-house, and made an examination of the rooms and prices, and expected, if he had gone, to pay $38 per week for second floor back, of Ho. 51, and when asked why he did not go to the house, he answered: “Well, my wife called my attention to a publication, something about a blackmailing crowd at 51 and 53 West Twenty-fifth street.” He also testified that it led him to hesitate about going there, and that he did not go there. Upon his cross-examination, he testified that he did not remember what newspaper it was; that he thought it was in the legal column, the reports of the courts.
The publication complained of was in the “personal” column of the Herald of Hovember 19, 1876.
The defendant moved to strike out the testimony of this witness, on the ground that it did not appear *72 to relate to the libel complained of. This motion was denied, the court stating “ it has no effect as binding you, but simply giving what he heard,” and the defendant excepted.
There was no evidence connecting the defendant with this publication, made after January 1, 1877, which in fact was the report of a legal proceeding between these parties, and published in another newspaper, the Times of January 16, 1877. The testimony of this witness, when it appeared that he did not remember in what newspaper he saw the words that led him to hesitate about going to board at the plaintiff’s house, or not to go there, should have been stricken out pursuant to the defendant’s motion. The defendant can only be called on to respond for his own publication, and the damages caused by it. If another newspaper published the report of a legal proceeding in this cause, that prejudiced the plaintiff, this defendant is not liable for that. If such publication was unlawful, the plaintiff is entitled to redress from that publisher ; if lawful, she is without remedy. As soon as it was apparent that the injury which the witness testified the plaintiff herself sustained in her business, from his attention being called to a publication respecting her boarding-house was not occasioned by the publication complained of in this suit, but by another, the motion to strike out his testimony should have been granted.
If it appeared that this testimony did not prejudice the defendant, and that the jury were uninfluenced, by its remaining before them, subject to what was stated by the court at the time of the denial of the motion to strike it out, the defendant’s objection to it would be answered. But it is difficult to take this view of it. The testimony of this witness remained before them. There is nothing that indicates that they were to exclude it wholly from their consideration. Is it prob *73 able they drew the distinction, in determining the plaintiffs damages, between such as were caused by the publication in the defendant’s paper and such as were caused by publications in other journals, and which, as reports of legal proceedings, were lawful ? Can it be determined that the legal rights of the def ndant were not prejudiced, and the jury influenced to some extent adversely to him by this evidence? These questions cannot easily be answered in the negative. It is better to adhere to the rules of evidence, by which all parties are protected, than to sustain a departure from them, on grounds that are not clearly tenable.
The judgment and order- appealed from should be reversed, and a new trial granted, with costs to abide the event.