JOSEPH F. BENNETT, RESPONDENT, v. WALTER G. SMITH, APPELLANT, IMPLEADED, &c.

*Action for libel—what evidence is admissible in, to mitigate the damage.*

Upon the trial of an action for writing and publishing a libel concerning the plaintiff, the defendant, having testified as to certain statements made to him by the plaintiff, and as to his previous knowledge of his life and character was asked, with a view of showing that he wrote the article with good motives and in the belief that it was true, " Why did you write it?"

*Held,* that the court erred in refusing to allow him to answer the question, as evidence that he acted in good faith was admissible, not in mitigation of the compensatory, but of the vindictive damages which a jury might award in such a case.

APPEAL from a judgment in favor of the plaintiff, entered upon the verdict of a jury.

The action was brought to recover damages for the publication, by the defendant Manning, in the *Chenango Union*, of an article referring to the plaintiff, which had been written by the defendant Smith, a correspondent of the paper, who resided at Sherburne.

The article was as follows, viz. :

" Joseph F. Bennett, a somewhat notorious character, whose presence in this village was a blessing too much disguised to be at all apparent, is holding revival meetings, and preaching Rev.. Mr. Earle's sermons, in various rural districts of this State. We know for a certainty that his object is a mercenary one. If this item can be copied by the *Union* exchanges, it may be the means of checking the operations of an unscrupulous adventurer. As Bennett is apt to assume an alias, we give a short description of

him. He is about five feet eight inches in height, light hair, light mustache, gray eyes, and is slightly lame. His age is about twenty. He has a rather pleasing address, and a remarkable flow of language. Look out for him."

*Delos L. Atkyns*, for the appellant.

*Albert F. Gladding*, for the respondent.

LANDON, J.:

The defendant wrote and caused to be published the article of which the plaintiff complains. Upon the trial there was evidence given tending to establish the truth of some of the libelous charges made in the article, but none was offered as to the charge that "Bennett is apt to assume an alias." The justification pleaded and proved must be as broad as the charge. (Townshend on Libel, 3 ed., 362.) Less than this it will be a partial, not a complete, defense. (Code Civ. Pro., §§ 508, 536.) The learned judge before whom the case was tried, therefore properly instructed the jury that the action was undefended, and the only question for their consideration was the amount of damages the plaintiff was entitled to recover. The defendant was a witness in his own behalf. With the view of showing that he wrote the article with good motives and in the belief that it was true, his counsel asked the question, "Why did you write it?" The plaintiff objected, and the objection was sustained, and the defendant excepted. The exception was well taken.

Let us assume that the defendant could not believe the charges made by him respecting the plaintiff unless he had previously seen or heard something tending to satisfy him of their truth (*Hatfield* v. *Lasher*, 17 Hun, 23; affirmed in Court of Appeals; *Bush* v. *Prosser*, 11 N. Y., 347); and that it therefore follows that, as a condition precedent to his right to testify to his belief in the truth of the charges, he should adduce the facts inducing his belief. (*Willover* v. *Hill*, 72 N. Y., 36.) The charges were that the plaintiff was "a somewhat notorious character . . . holding revival meetings, and preaching Rev. Mr. Earl's sermons . . . his object a mercenary one . . . an unscrupulous adventurer,

. . . apt to assume an alias." Now at the time the question was asked calling for the motives and belief of the defendant, it had already appeared that the plaintiff had been a student at law, prosecuting his studies in five different offices; that after that he attended the revival meetings of the Rev. Mr. Earl at Sherburne, and made a profession of Christian faith. That he then went to East Pharsalia and attended the meeting there, and " talked most every night," sometimes in the Congregational, and sometimes in the Baptist church. After that he had an interview with the defendant, who was a member of the Congregational church in Sherburne, and who had known the plaintiff since he was a small boy. The defendant testified that the plaintiff seemed to him to be slightly under the influence of liquor; that the plaintiff told him that he had been assisting in carrying on a meeting at Pharsalia; that he had taken some of the collection money; that preaching was d---d paying business; that he had got many of his points from Earl's sermons or from his book on sermons. It may be conceded, assuming all that the defendant testified to, to be true, that it would not convince a court and jury that the plaintiff was either " a notorious character " or an "unscrupulous adventurer." But it is not difficult to find that the defendant; in his zeal, and perhaps over-readiness to arrive at conclusions, believed him to be both. Much less difficult is it to find that he believed that the plaintiff's motive was " a mercenary one," especially if, when supposed to be in his cups, he confessed that he had taken the collection money, and regarded preaching as a business whose paying features extorted from him profane commendation.

From the testimony referred to it can be inferred that the defendant had formed an unfavorable opinion of the plaintiff. With that opinion, it is conceivable that if the plaintiff confessed getting many points from Mr. Earle's sermons, the defendant would advance to the belief that he preached the sermons themselves; and that if an alias would favor his schemes, he would " be apt to assume it." Unjustifiable as these conclusions might be, the point simply was, did the defendant, from the causes we have intimated, become possessed of and believe them ? If he did, the law does not deny him the privilege of avowing his belief in his defense.

What has been said has not been said for the purpose of reflecting upon the plaintiff, but simply to show how the defendant came to reflect upon him, and to show that the defendant had the right, upon the trial, after stating the grounds of his belief, to state what that belief was, unjust and cruel though it may have been.

In libel and slander the damages may embrace two items, namely, compensatory and punitive. (*Bush* v. *Prosser, supra.*) The law implies damage from the injury done. (*Sanderson* v. *Caldwell,* 45 N. Y., 398.) If the defendant lacks a legal excuse for his libel of the plaintiff, the law presumes malice, and the defendant ought to respond to the full extent of the actual injury done the plaintiff; that is, compensatory damages should be given. But if, in addition to this malice which the law presumes, and which may be merely constructive and passive in fact, the jury should find that the defendant was actuated by active and vindictive malice, then they may give, in addition to the actual damages, punitive damages. These are not given as the actual due of the plaintiff, but awarded him, that the defendant may be punished and a wholesome example afforded. It is true that in practice the jury do not distinguish between the damages that are compensatory and those that are punitive. No standard exists whereby to measure in money the equivalent for injured character, and hence the unjustified defendant is always in danger of being mulcted in punitive damages. To avoid this, he is permitted to plead and prove matters in mitigation of damages. The strictly compensatory damages ought not to be mitigated, else the defendant might cast the consequences of his wrong upon the plaintiff. But the strictly punitory damages may be mitigated. These depend upon the malice of the defendant, and malice depends upon the motive with which the libel was published. If the motive was good, the malice for which the defendant must respond may be existent by operation of law merely, and not by force of evil passions moving the defendant to wish and to do the plaintiff a wrong. The law, it must be borne in mind, presumes the existence, not the character, of the defendant's malice. That character, therefore, becomes a material fact in the case, and hence the defendant's motive or intent equally material.

The question "Why did you write it?" called for the defend-

ant's intent or motive. The act itself was indecisive. Within the rule established in *Seymour* v. *Wilson* (14 N. Y., 567), and numerous cases following it, the defendant had the right to answer the question. We cite a few. (*Dutchess County Ins. Co.* v. *Hachfield*, 73 N. Y., 226; *Kerrains* v. *People*, 60 Id., 221; *Cortland County* v. *Herkimer County*, 44 Id., 22; *Fiedler* v. *Darrin*, 50 Id., 437; *McKown* v. *Hunter*, 30 Id., 625.)

· George Shaw, a witness called by the defendant, testified to declarations of the plaintiff, tending to show that the plaintiff had been guilty of mercenary and gross improprieties of conduct in his church relations, and tending to show that he was confessedly a religious impostor.

This testimony might properly have been submitted to the jury as tending to establish the truth of the charges that the plaintiff was an "unscrupulous adventurer," a "notorious character," and his "motive a mercenary one." The answer instanced the facts, supported by this witness, as specifications to sustain the general charges. If the jury had, upon this and the other evidence, found these charges true, as to them the defendant should not have been made to respond in damages. But the court instructed the jury that this testimony was only to be taken into account in making up the character of the plaintiff, and could not avail the defendant in mitigation.

The exception was well taken by the defendant. Under sections 508 and 536 of the Code of Civil Procedure, the defendant may in his answer allege a partial defense to the plaintiff's complaint, and, of course, what he may allege he may prove. Independently of the Code, the defendant should only respond for the wrong which he cannot legally excuse or justify, and as these charges do not form a part of the charges unjustified, nor in any way belong to them, the defendant had the right to have the jury consider and pass upon the evidence tending to establish their truth.

We have said that the learned judge was strictly right when he instructed the jury that the action was undefended. In the charge itself, he did not say that the action was wholly undefended, but in substance, that it was not wholly defended. We think, however, that in his refusals to charge as requested by the defendant's

counsel, he gave the jury to understand that the action was wholly undefended. Whether it was not partially defended, in that some of the libelous charges were justified, we think, should have been submitted to the jury upon the evidence.

The judgment should be reversed, and a new trial granted, costs to abide the event.

LEARNED, P. J., and BOCKES, J., concurred.

Judgment reversed, new trial granted, costs to abide event.