URI C. LYNDE, PLAINTIFF, v. CORYDON C. JOHNSON, DEFENDANT.

*Slander — what words are not actionable* per se *— when their meaning must be left to the jury — when a charge of malpractice in the treatment of a particular case is actionable* per se *— words not set out in the complaint, although proven, cannot be submitted to the jury.*

This action was brought to recover damages for slanderous words spoken by the defendant with reference to an amputation performed by the plaintiff, who was a physician and surgeon. The complaint alleged that among the slanderous words uttered by the defendant were the following: "That the plaintiff did it (cut off the arm) to get his name up and get a big fee." Upon the trial the court was requested, and declined, to charge that if the defendant said of and concerning the plaintiff that he amputated the arm *simply* for the purpose of getting his name up, or *simply* for the fee he expected to get, the words were actionable *per se*.

*Held*, that its refusal to so charge was proper, as the evidence did not show that the defendant had used the word "simply."

*Semble*, that the court could have properly refused to charge that the words which were alleged, and proved to have been used, were actionable *per se*.

The court also declined to charge that if the jury found that the defendant said that the plaintiff acted hastily in amputating the arm, and did not make the amputation on his own judgment, or that he took the word of the physician with whom he consulted, and did not himself sufficiently examine the arm, such words were actionable *per se*.

*Held*, no error; that these words did not in terms so relate to the general professional character, habits or skill of the plaintiff as to entitle them to the construction asked for.

The court refused to charge that if the jury found that the defendant said that "it was a perfect piece of imposition, and that the plaintiff did it to get his name up," such words were actionable *per se.*

*Held,* that the court properly refused so to charge, for the reason that important words in the request were not set out in the complaint.

That the court also properly refused to charge that a statement of the defendant that the plaintiff had better have cut off the boy's left arm, then he would have had his right arm, was actionable *per se.*

When words are spoken concerning a physician in reference to his treatment of a particular case, they may just as effectually injure his professional character and standing as when spoken of him generally in that respect, and when their natural and plain import and effect are such that they impute to him general professional ignorance or want of skill, the fact that they are spoken in reference to the treatment of a particular case does not render them less actionable, as matter of law, than if the words had been uttered in respect to the general professional character of the physician.

MOTION by the plaintiff for a new trial, on exceptions taken at Erie Circuit and ordered heard at General Term, in the first instance.

The action was for slander, for words alleged to have been spoken by the defendant of the plaintiff imputing to the latter a want of knowledge or skill in his profession.

The plaintiff was a physician and surgeon, and was called upon as such to treat a young man whose right arm had been seriously injured while engaged in the act of coupling cars upon a railroad, and after consultation with two other members of the medical profession proceeded to and did amputate the injured arm above the elbow. The complaint contains nine counts, and alleges in various forms words as spoken by the defendant of the plaintiff concerning his act of amputation. The answer puts in issue the allegations of the complaint substantial to the right of recovery, and further alleges that the bones of the arm were not broken, and that the injury did not require amputation. There was evidence tending to prove that the words used by the defendant were that "it would have been better to have taken off the other arm, then he would have had the right arm to use;" that "the arm should not have been cut off;" that "it was a perfect piece of malpractice;" that "it was a bad piece of malpractice;" that "it was the biggest piece of malpractice he ever knew or heard of; the circulation was good, there were no bones broken;" that the

plaintiff "did it to get his name up and get a big fee;" that the plaintiff "cut off the arm and got his name up and got a big fee;" that "the plaintiff acted hastily." And that these words were spoken by the defendant in conversations with others about the case before mentioned and concerning the treatment of it by the plaintiff.

The verdict was for the defendant.

*Charles W. Goodyear*, for the plaintiff.

*Norris Morey*, for the defendant.

BRADLEY, J.:

No special damages were shown. The right of the plaintiff to recover depended upon the conclusion that the words complained of were actionable *per se*. The proposition is well settled that words falsely spoken of a physician, imputing to him general professional ignorance or want of skill or integrity in, and having relation to, his profession, are slanderous and will support an action. And the same rule applies to those engaged in other professions, trades, business or employment. (Folkard's Starkie on Sl. and Lib., 110; *Southee* v. *Denny*, 1 Exch., 196; *Foot* v. *Brown*, 8 Johns., 64; *Fowler* v. *Bowen*, 30 N. Y., 20.)

The words in question had application to the plaintiff in reference to a particular case, and did not in general terms charge him with misconduct or want of skill in his profession, and for that reason the trial court held and charged the jury that, in view of the circumstances under which the words were spoken, it could not, as matter of law, be said that they were slanderous *per se*, but that their import and the intent with which they were uttered were questions for the jury to determine, as the imputation which might be conveyed by them was a matter of some doubt, and that if they imputed to the plaintiff ignorance or want of skill or knowledge in his profession, a *prima facie* case was made out, but if the jury found that the words were not entitled to such import, then the plaintiff was not entitled to recover, because no special damages appeared. It is unnecessary to inquire whether the legal proposition stated by the court in the charge was correctly applied to the evidence in this case, because no exception was taken to the charge

as made. If the words were susceptible of two interpretations, or if the import of them was doubtful, so that they might or might not be construed as slanderous *per se*, the question of their meaning and import was for the jury. (*Sanderson* v. *Caldwell*, 45 N. Y., 398; *Hayes* v. *Ball*, 72 id., 418.)

But the fact that words are spoken concerning or relate to a single case or transaction of a person in his profession does not necessarily deny to them interpretation as matter of law which gives to them the character and effect of slander *per se*. They, in such case, are entitled to have such effect given them by the court when they necessarily import gross ignorance, want of skill or integrity in his calling or profession, and that is so when such is their plain and natural import. (*Dole* v. *Van Rensselaer*, 1 Johns. Cas., 330; *Secor* v. *Harris*, 18 Barb., 425; *Carroll* v. *White*, 33 id., 615; *Sumner* v. *Utley*, 7 Conn., 257; *Camp* v. *Martin*, 23 id., 86.)

The only questions presented here for consideration arise upon exceptions, and they were taken to refusals of the court to charge as requested. The court was requested, and declined to charge, that if the defendant said, of and concerning the plaintiff, that "he amputated the arm *simply* for the purpose of getting his name up;" (2) that he did it *simply* for the fee he expected to get," the words were actionable *per se*, and exceptions were taken to refusals to charge those propositions severally and together as one.

The requests assume to contain words uttered by the defendant. It does not appear by the evidence that the word *simply* or its equivalent was so used by him. The construction of the phrase in such manner as to exclude any other consideration in the act of amputation than that of the purpose to get his name up, or to get a fee, might have a material bearing on the question of the construction and meaning of the words. And in such case it would be difficult to construe the words otherwise than an imputation of recklessness or professional conduct arising out of ignorance, or otherwise relating to his professional character in such manner as to require the conclusion that the words were actionable as matter of law. It may be that the words in that respect, which the evidence tends to prove were spoken by the defendant, would have justified the jury in finding that they imputed such purpose only, but we think they did not necessarily in their import exclude from the

treatment a legitimate object, although there may have been united with it the purpose of the plaintiff to get his name up and to get a fee. In that view the use of the word "simply" in the request to charge was a material modification of the effect of the words as they appear by the evidence to have been spoken by the defendant. If the conclusion of the request had, by its terms, been made dependent upon the finding of the jury that the words imputed that he made the amputation simply or only for the purposes in the request mentioned, it would have been a proposition quite different from the one presented and into which the latter cannot reasonably be construed. The exception to the refusal to charge that if the defendant said "the plaintiff amputated the arm for the sake of getting his name up," those words were actionable *per se*, was not well taken, because the words used did not necessarily import anything generally against the professional character or skill of the plaintiff, or exclude the idea that he was not also governed by a proper motive, although the jury may have, upon the evidence, been permitted to find that the words imported and were understood to impute to him such ignorance or disregard of professional duty as to render them of themselves actionable.

The court was also requested, and declined to charge that if the jury found the defendant said the plaintiff acted hastily in amputating the arm, and did not make it on his own judgment, or that he took Dr. Babcock's word, and did not examine the arm sufficiently himself before he made the amputation, such words were slanderous *per se*, and took exceptions severally to the refusals to charge those propositions. Those words did not in terms so relate to the general professional character, habits or skill of the plaintiff as to entitle them to the construction asked for as matter of law. They were susceptible of construction and import that would charge him merely with want of the requisite care and caution in ascertaining the remedy required in that particular case which may have resulted in erroneous treatment. This would not necessarily imply such gross ignorance, misconduct or want of skill of the plaintiff as a surgeon, as to render the words actionable without special damages. Therefore, the import of the words and the understanding which the speaking of them would convey to the hearer were for the jury. And the same may be said of the exception to the refusal of

the court to charge that if the jury should find that the defendant said the plaintiff had better have cut off the boy's left arm, then he would have had his right arm, the words were actionable *per se.* Whether this statement was an imputation that the plaintiff's conduct was grossly reckless or resulted from ignorance, want of skill or fitness for the duties of his profession on the one hand, or that his treatment arose ,from a mistake merely in the diagnosis of the case on the other hand, was a question for the jury and not for the court; and as they should find in that respect, the speaking of the words would or would not produce the legal presumption of damages.

When words are spoken concerning a physician in reference to his treatment of a particular case, they may just as effectually injure his professional character and standing as when spoken of him generally in that respect, and when their natural and plain import and effect are such that they impute to him general professional ignorance or want of skill, the fact that they are spoken in reference to the treatment of a particular case, does not render them less actionable, as matter of law, than if the words had been uttered in respect to the general professional character of the physician. But in view of the fact that competent and eminent physicians and surgeons may, without fault, mistake the symptoms and treatment of a particular case, words spoken of a physician in reference to it only, may by that fact be so qualified that unless they have an import and meaning which in effect reaches beyond the particular case and its treatment, and goes to affect the doctor's professional character, learning or skill, the law implies no damages as the consequences, and special damages are necessary to support the action. (See cases before cited.)

The only other exception was to the refusal of the court to charge that if the jury find that the defendant said of and concerning the plaintiff, and the amputation referred to, " that it was a perfect piece of imposition, and that the plaintiff did it to get his name up," such words were actionable *per se.*

If it be assumed that these words spoken of the plaintiff were slanderous and would support an action, the difficulty in this case is that the important words in the request are not set out in the complaint. We fail to find alleged, as any part of the several

causes of action, the words "that it was a perfect piece of imposition," or any in substance like them. And although no objection was taken to them, and no motion made to strike them out, they cannot be deemed as within the issues, nor can the complaint be amended or deemed so here for the purpose of the predication of error. And because they were not so counted upon in the complaint, the exception to the refusal to charge was not well taken. (*Fox* v. *Vanderbeck*, 5 Cow., 513; *Olmsted* v. *Miller*, 1 Wend., 506.)

The words charging the plaintiff with malpractice may have been as effectual an imputation to support an action as those just mentioned, but the allegation and proof of the speaking of the words imputing malpractice, cannot be used to support the exception to the refusal to charge as so requested.

We are not by any exception required to determine the legal import of the words charging the plaintiff with malpractice in speaking of the treatment of the case, and we do not hold that those words were not actionable *per se.*

This case comes here on exceptions only, and none of them seem to be well taken.

The motion for a new trial should be denied and judgment ordered on the verdict.

SMITH, P. J., and HAIGHT, J., concurred; BARKER, J., not sitting.

Motion for new trial denied and judgment ordered for the defendant on the verdict.