CHARLES A. BRODEK, Respondent, *v.* RICHARD LLOYD JONES, Appellant.

First Department, March 13, 1925.

Libel and slander — action by lawyer to recover damages for alleged libel — telegram by former client to third person not libelous per se — statement contained in telegram cannot be made libelous per se by extrinsic facts — failure to allege special damages prevents recovery.

A telegram written by the defendant to an arbitrator which reads: "Against the insistence of my attorneys and friends and things that seemed obvious I held fast to my belief in disinterested efforts until your last letter came with its enclosure both of which I shall keep stop Brodek should be paid by the one he effectively served as were you," is not libelous *per se* as against the plaintiff, an attorney retained by the arbitrator, the defendant and another, and the publication thereof cannot be made the basis of an action by the attorney to recover general damages.

The telegram cannot be made libelous *per se* so as to sustain an action to recover general damages upon extrinsic facts alleged in the complaint, none of which appear in the telegram itself.

The failure of the plaintiff to allege special damages prevents recovery.

APPEAL by the defendant, Richard Lloyd Jones, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 28th day of August, 1924, denying his motion made under rule 106

of the Rules of Civil Practice, for judgment dismissing the complaint on the ground that it does not state facts sufficient to constitute a cause of action.

*Gregory, Stewart & Wrenn* [*W. Randolph Montgomery* of counsel; *Allen S. Wrenn* with him on the brief], for the appellant.

*Ralph H. Raphael* [*Charles A. Brodek* of counsel], for the respondent.

Merrell, J.:

The action is to recover damages for an alleged libelous publication by the defendant. Plaintiff in his complaint alleges that he is an attorney and counselor at law of the State of New York of thirty years' standing, a member of the American Bar Association, of the Association of the Bar of the City of New York, and of the New York County Lawyers' Association, and has served as a member of a number of committees in said last two named associations; that plaintiff is a native of the city of New York, and has resided there during his entire life, and that since his admission to the bar has practiced his profession in said city. Plaintiff further alleges that since his admission to practice as an attorney and counselor at law he has been a director of industrial corporations, of one national bank within the city of New York, and has been the attorney and confidential adviser of numerous corporations, partnerships, individuals and estates, and that his reputation in the city of New York and elsewhere has always been that of a competent, honorable and trustworthy attorney, counselor and adviser and one to whom matters requiring the judgment and advice of an attorney and counselor of integrity could safely be intrusted.

The plaintiff then alleges, in the 6th paragraph of his complaint, that prior to October, 1923, the defendant, Richard Lloyd Jones, and one John H. Perry were jointly interested in a number of newspapers published at various places in the United States, and that the defendant and said Perry were involved in the liabilities of said newspapers or some of them; that prior to October, 1923, the defendant and said Perry were negotiating for a severance of their interests in the said newspapers, and being unable to agree upon the terms and conditions of such a severance, called in a third party, one Courtland Smith, to act as mediator in effecting a peaceful severance of their interests in said newspapers to the end that receivership and a resulting impairment in the value of said newspaper properties might be avoided. Plaintiff further alleges, upon information and belief, that the negotiations between the said owners of said newspapers and said Courtland Smith as

mediator had reached a point early in October, 1923, when it became necessary to retain an attorney and counselor acceptable to the mediator and the said parties to work out the legal details of the severance of said interests and in the preparation of formal legal documents effectuating the same, and that thereupon, on or about the 8th day of October, 1923, the plaintiff was retained by the defendant, by the said Courtland Smith, and the said John H. Perry as such attorney, and thereafter rendered services for the defendant and said Perry under the direction of said mediator, conferring with all three parties, examined the law, prepared necessary papers incident to the matter, and that there followed a severance of the interests of the defendant and said John H. Perry in said newspapers upon terms and conditions acceptable to both.

Plaintiff further alleges that in December, 1923, he rendered a bill to the said Courtland Smith for account of the defendant and said John H. Perry for the services which he had thus performed, and that thereafter and on the 3d day of January, 1924, the said Courtland Smith sent a telegram to the defendant wherein the said Smith stated that he found it necessary to pay the plaintiff at once and calling attention of the defendant to the fact that he had not answered his letter of some weeks prior thereto in reply to the defendant's request as to what he could do for the plaintiff and for Smith, and asked that the defendant wire a reply. Smith's telegram closed with the suggestion that if it would help defendant he thought he could get plaintiff to accept a note for defendant's share. Plaintiff further alleges on the day following, to wit, on January 4, 1924, the defendant falsely and maliciously composed and published of and concerning the plaintiff in a telegram sent by the defendant on that day to the said Courtland Smith the following matter, which the plaintiff alleges was false, libelous and defamatory, to wit:

"*Jan.* 4, 1924.

" COURTLAND SMITH,
    " Private American Motion Picture Producers' Assn.,
        " 522 Fifth Ave.,
            " New York, N. Y.:
" Against the insistence of my attorneys and friends and things that seemed obvious I held fast to my belief in disinterested efforts until your last letter came with its enclosure both of which I shall keep stop Brodek should be paid by the one he effectively served as were you.          " (Signed) RICHARD LLOYD JONES."

Plaintiff in his complaint alleges the innuendo with reference to said telegram that the said telegram meant that plaintiff as the

attorney and counselor at law had been disloyal to the defendant's interests in the said matters with said John H. Perry, and that plaintiff, as such attorney and counselor, had betrayed defendant in said matters; that plaintiff, as such attorney and counselor, had served said John H. Perry knowingly to the detriment of defendant and at the expense of defendant's interests; and that plaintiff had betrayed the trust reposed in him as such attorney and counselor by said defendant, and had been recreant in his duty as such attorney and counselor. Plaintiff further alleges that said telegram was dictated by the defendant and finally was transcribed and delivered to the said Courtland Smith, and that the facts stated in said publication with reference to plaintiff were false, malicious and libelous, and were made by the defendant with the intention to injure plaintiff in his good name, fame, credit and in his profession, and to cause it to be believed that by reason thereof he had become disloyal and recreant to his duty in his profession and unfit to continue therein, and that by reason of such publication plaintiff's reputation as an honorable and loyal attorney and counselor at law had been greatly damaged, and that plaintiff had been injured in his good name, fame and credit as an attorney and counselor at law and had been held up to public scorn, ridicule and contempt, and damaged in the sum of $50,000, for which sum judgment was demanded against the defendant.

I am of the opinion that the alleged defamatory matter of which the plaintiff complains was not libelous *per se.* To support his cause of action the plaintiff alleges various matters of inducement seeking thereby to show that the telegram in question was libelous because of the extrinsic facts set forth in the complaint, none of which facts, however, appear in the telegram itself. The extrinsic facts thus set forth have been hereinbefore adverted to. The complaint, however, contains no allegation of special damage suffered by the plaintiff, the plaintiff claiming only general damages. It is perfectly plain that the language used in the telegram in question was not libelous *per se* or defamatory upon its face. Even with the innuendo alleged I do not think the jury could spell out a defamatory meaning in the words used in the telegram itself. In any event, the words used in the telegram are libelous only by reason of the extrinsic facts set forth in the complaint, and the telegram in such case is not libelous *per se* but only by reason of the extrinsic facts alleged. In *O'Connell* v. *Press Pub. Co.* (214 N. Y. 352) the Court of Appeals, on appeal from an order of the Appellate Division sustaining the Special Term, which decided that the article complained of was libelous *per se,* under the peculiar circumstances and by reason of the extrinsic facts alleged in the complaint in

that case, clarified some confusion which theretofore had existed as to whether language which became defamatory only by reason of extrinsic facts alleged by way of inducement, was libelous *per se.* The Court of Appeals held that the article in that case was not libelous *per se,* and that as no special damage was alleged, the article could not be made libelous through the averment of facts extrinsic to the publication itself. Judge COLLIN, writing for the court, said (at pp. 358, 360):

" The appellant asserts that either publication is not a libel *per se* or upon its face, and if a libel, is so only by reason of the facts extrinsic to it and alleged in the complaint, and the complaint does not allege that the publication caused the respondent special damage. The appellant then invokes the established rules of law that (a) a publisher of a libel not defamatory upon its face, and defamatory by virtue of extrinsic facts is liable only for the pecuniary damage which legally resulted from the publication, and (b) the facts showing such damage must be fully and specifically set forth in the complaint. General allegations of damage are not sufficient. (*Bassell* v. *Elmore,* 48 N. Y. 561; *Stone* v. *Cooper,* 2 Denio, 293, 299; *Crashley* v. *Press Pub. Co.,* 179 N. Y. 27; *McNamara* v. *Goldan,* 194 N. Y. 315.) Indisputably, the present complaint contains only general allegations of damage. Therefore, we must determine whether or not the publication in and of itself was libelous. * * *.

" The innuendoes of the complaint seek to give the language of the publication a broader application, but improperly and ineffectually, because it is not the office of the innuendo to graft a meaning upon or enlarge the matter set forth, but to explain the application of the words used. The allegations of extrinsic facts do not enter into the discussion for the reason that if the defamatory matter is actionable *per se,* no inducement or averment of extrinsic facts is necessary."

I think the law as thus stated by the Court of Appeals puts at rest any possible claim that there can be a recovery in the absence of allegations showing that the plaintiff has suffered special damages. No such allegations are contained in plaintiff's complaint. Reading the telegram alone there is nothing of a defamatory nature in the language used. The plaintiff is not charged with the commission of crime, nor is he held up to ridicule, obloquy or disgrace, nor is there anything in the language used which would tend to injure him in his business or profession. (*Sanderson* v. *Caldwell,* 45 N. Y. 398.) There is nothing in the first sentence of the telegram indicating that the plaintiff is referred to in any way. Reference is made to a letter written by Smith to the defendant with an inclo-

sure. Neither the letter nor the inclosure is set forth in the complaint and, therefore, they cannot be considered. The second sentence of the telegram, it is claimed, refers to the plaintiff, but read by itself seems to be quite meaningless, and, except for the innuendo alleged, in nowise reflected upon the plaintiff, who was acting for both Perry and Jones in the controversy. The innuendo alleged in the complaint is unsupported by any of the language of the telegram itself. Such innuendo is entirely dependent upon the extrinsic matter alleged in the complaint, namely, that the plaintiff was the acting attorney for both Perry and the defendant under the supervision of Smith in the matter mentioned. An innuendo which cannot be drawn except by reference to extrinsic facts cannot support the complaint unless the plaintiff at the same time alleged both inducement and special damages. (*O'Connell* v. *Press Pub. Co.*, 214 N. Y. 352; *Klaw* v. *New York Press Co.*, 137 App. Div. 686; *McNamara* v. *Goldan*, 194 N. Y. 315.)

The learned court at Special Term in denying defendant's motion, relied upon the cases of *Sanderson* v. *Caldwell* (45 N. Y. 398) and *Stephens* v. *Pattou* (208 App. Div. 63) as sustaining the opinion of the court that the telegram was libelous *per se* upon the allegation of extrinsic facts contained in the complaint, and that the plaintiff was not bound to allege special damage. It seems to me the court at Special Term erred in this respect because of the fact that in both *Sanderson* v. *Caldwell* and in *Stephens* v. *Pattou*, the language used in the alleged libels was in each case clearly libelous *per se*. The Court of Appeals held in the *Sanderson* case that the publication was libelous *per se* " without reference to the professional character of the plaintiff." *Stephens* v. *Pattou* was an action for slander and this court held that the charging that the plaintiff " would not dare to start anything here after the crooked work he did at the church," was slanderous *per se*. As this court said (at p. 65): " The conversation, however, may be construed in connection with the extrinsic fact that the plaintiff had a wide reputation as a musician, teacher and composer and had been the organist of the church." It seems to me that there can be no question but what this court correctly held that the use of the words " crooked work " constituted slander *per se* when spoken of and concerning a musician, teacher, composer and organist of the church.

It, therefore, seems quite clear that under the decisions language cannot be held to be libelous *per se* when it is necessary to examine extrinsic facts alleged to give the language a libelous meaning. I, therefore, do not think the words in this telegram can be said to be libelous *per se*.

The plaintiff having alleged no special damages and the alleged

defamatory matter not being libelous *per se,* the complaint should have been dismissed. (*Crashley* v. *Press Pub. Co.,* 179 N. Y. 27; *Mc Namara* v. *Goldan,* 194 id. 315.)

An examination of the complaint makes it quite doubtful whether as matter of fact the plaintiff has suffered any damages by reason of the alleged libel. The plaintiff recites at length his admission to the bar, his membership in various honorable associations of the profession, and that he has occupied positions of confidence in connection with said organizations; that he has many influential clients, including banking and other corporations, and so far as the complaint shows still retains such membership and clientage. It is not alleged that as the result of the alleged libel the plaintiff has suffered the loss of clients nor been deprived of his membership or connection with the various associations which he holds.

The order appealed from should be reversed, with ten dollars costs and disbursements, and defendant's motion for judgment granted, with ten dollars costs.

CLARKE, P. J., DOWLING, McAVOY and BURR, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.