CHARLES NAEGELE, Plaintiff, *v.* MACFADDEN PUBLICATIONS, INC., Defendant.

Supreme Court, Trial Term, New York County, November 20, 1936.

*Joseph R. Truesdale* [*Raymond H. Berry* of counsel], for the plaintiff.

*Mayer C. Goldman* for the defendant.

MILLER, J. This is an action for libel. It was conceded by the defendant that the plaintiff was widely and favorably known as a pianist and that over two million copies of the magazine containing the article which is the subject of this action were sold by it. The following, among others, are some of the reasonable inferences that may be drawn from the statements contained in the article: (1) He held her in his arms for hours; (2) he kissed her; (3) he was a party to the romance; (4) he *won* and spurned her love; (5) that the plaintiff was a party to the love drama; (6) that he was as conscious of Niemi as she was of him; (7) that he was contented with her; (8) Charles (the plaintiff) gave her a ten-dollar gold piece and a box of candy wrapped in gold paper and that those were payments *for his love* or a *kind* of salary for services; (9) that there was a change in his attitude; (10) the sincerity of my *kisses* warranted my staying; (11) Niemi was in Charles Naegele's arms; (12) that he was in my room and that I was in his room; (13) that there was illicit relationship; (14) that the plaintiff testified falsely in court as to his conduct.

There is at least a reasonable deduction that the plaintiff was guilty of conduct unbecoming a gentleman with a servant of humble origin while a guest of his friend and during the absence of his host. These statements and inferences were calculated to and did hold the plaintiff up to public contempt, ridicule and disgrace and tend to prejudice and injure the plaintiff in his reputation, and are, therefore, libelous *per se.*

The article was written about two years after the trial of a lawsuit, and was published almost three years thereafter. It is evident, and I find that it was written and published as a story of " one of New England's strangest romances " and not written or published as a report of a judicial proceeding.

Though reference to a lawsuit is made under a photograph of Niemi on the first page of the article, the impression is conveyed that it is not a report of a judicial proceeding by a newspaper but a story by the " girl in the case." One has to read several pages of the article before he finds any mention therein of a lawsuit. There is no intimation that its contents are the substance of testimony given upon a trial. While it is stated that the author of the article was confined in an asylum, no mention whatsoever is made in the article of the testimony of witnesses for the defendant, both laymen

and doctors, who claimed upon the trial that Niemi (the girl in the case) was insane. In the article appears the following: " The judge told that room filled with people that my love for Charles Naegele had no part in my suit against Mr. Buswell; nothing to do with those nights and days of horror I spent in Danvers. Although Mr. Buswell had chosen that as a method of breaking up my romance, my love had nothing to do with the case." This statement is at best only partially correct.

Though the lapse of time between the trial and publication of a report thereof does not affect the privilege as a matter of law, it is some evidence bearing upon the question whether the publication of the article by the defendant in its periodical entitled *True Story Magazine*, purporting to have been written by Tynne Niemi, was *intended* as a report or as a story. A comparison of the testimony given upon the trial with the publication makes it manifest that the article refers to many matters as to which no testimony was given upon the trial.

The article was not a fair and true report of the trial, nor was it a report of a current event by a newspaper within the meaning of section 337 of the Civil Practice Act. As it does not constitute a fair and true report, it is not privileged. (*Campbell* v. *N. Y. Evening Post*, 245 N. Y. 320, 325, 329.) Defendant was required, if it made any report at all, to make it fair and impartial. (*Lee* v. *Brooklyn Union Publishing Co.*, 209 N. Y. 245; *Campbell* v. *N. Y. Evening Post, supra; Schaffran* v. *Post Publishing Co.*, 258 N. Y. 207.)

The information which the author of the article obtained from the record of the judicial proceeding and which he had reason to believe, must, however, be given consideration by the court in fixing the exemplary damages. The burden of proof as to justification is upon the defendant. This burden the defendant has not sustained. Under the circumstances, to award plaintiff merely nominal damages would be tantamount to finding that plaintiff had no character to lose. (*Sanderson* v. *Caldwell*, 45 N. Y. 398, 406.)

The plea of privilege being unavailable, and the defense of justification not having been established, the award of damages rests in the sound discretion of the trier of facts. In fixing damages the court has taken into consideration that the publication in defendant's magazine did not cause damage to the plaintiff in the vicinity of the places where the newspapers which reported the proceedings of the trial were published. The court has passed upon the proposed findings submitted by the plaintiff and the defendant. I find for the plaintiff for the sum of $7,000 and direct judgment accordingly.