■ In the Matter of JOHN J. POWIS et al., Respondents-Appellants, v RUDOLPH GIULIANI, as Mayor of the City of New York, et al., Appellants-Respondents. GUY V. MOLINARI et al., Respondents, v RUDOLPH GIULIANI, as Mayor of the City of New York, et al., Appellants. [628 NYS2d 634] —Order and judgment, Supreme Court, New York County (Walter Schackman, J.), entered March 17, 1995, which granted petitioners' application for a preliminary injunction enjoining respondent Fire Department's planned elimination of fire alarm boxes from city streets pending completion of a full environmental impact statement and submission of a detailed plan demonstrating that alternative means of alerting the Department to fires will be an effective substitute for the alarm boxes, unanimously modified, on the law, to the extent of requiring the Department to conduct an environmental evaluation resulting in the issuance of a positive declaration or a negative declaration, and otherwise affirmed, without costs.

The Fire Department, contending that its own data indicate that a significant majority of all fire alarms are made by telephone or other means, that the significant number of false alarms made by means of the street alarm boxes impedes the Department's operations, poses public health risks and absorbs an inordinate portion of the Department's operating budget, and that elimination of the street alarm boxes will resolve these problems as well as allow for diversion of needed capital funds to other emergency-related functions, submitted a plan that would eliminate street alarm boxes and shift primary reliance for fire alarms to telephone technology. Petitioners

contend that the Department's own past inconsistencies in this regard render the action arbitrary and capricious, and that the resulting hazard to public health and safety bring the administrative action within the reach of SEQRA.

The controversy cannot be found nonjusticiable absent an adequate showing by the Department that the plan will not significantly undermine its public safety function. True, "[a]cquiring data and applying expert advice to formulate broad programs cannot be economically done by the courts * * * [a] restraint [that] is particularly important when the creation of a program entails selecting among *competing* and *equally meritorious* approaches so as to allocate scarce resources" (*Klostermann v Cuomo*, 61 NY2d 525, 535 [emphasis added]). Yet, " 'the line separating the justiciable from the nonjusticiable has been subtle, and with the passage of time, it might be said, has even moved' " (*supra*, at 535, quoting *Jones v Beame*, 45 NY 402, 408, citing *Baker v Carr*, 369 US 186). Given the Fire Department's historic and critically important function of responding to the outbreak of fires, there should be at least some threshold showing that the alternative technology upon which it will be relying is adequate to the task. If the Department had submitted competent and persuasive proof that the enhanced 911 technology was in place and working, or that the telephone system was adequate as a means of primary alarms in tandem with some kind of a backup during transient breakdowns in service, such as might be provided by the empirical results of a pilot program, the plan would clearly be a traditional executive function not subject to judicial review. However, the documentation submitted in support of the plan, while adequately posing the problem, does not show that an alternative program will be both competing and equally meritorious by comparison with the present system. While it is not for the courts to determine which system is better, we require at least that the alternative system be shown to be reliable and effective with respect to the discharge of the Department's most fundamental public duty.

While a reasoned choice among competing response systems would not, of itself, pose the sort of hazard to health (6 NYCRR 617.11 [a] [7]) and safety (62 RCNY 6-06 [a] [7]) that would require an environmental review, given uncertainty as to the basic effectiveness of the alternative response system and the drastic departure from an historically successful system, it cannot be said that this is not a "new program * * * or [a] major reordering of priorities" (6 NYCRR 617.13 [d] [15]). Thus, a threshold environmental assessment is necessary. The CEQR

finding by the Department, classifying the action as a Type II action, and the nature of the supporting materials do not persuade us that the requisite hard look was taken for a Type I action. However, given the narrow nature of the relevant inquiry, and the possibility that a competent and persuasive study may establish that the substitution in systems does not pose a hazard, a full Environmental Impact Statement is not necessary at this time. An environmental assessment resulting in the issuance of either a negative declaration or a positive declaration will be permissible for present purposes. Of course, the issuance of a negative declaration may be subject to a separate judicial challenge.

We have examined the remaining contentions of both parties and reject them. Concur—Rosenberger, J. P., Wallach, Rubin and Mazzarelli, JJ.